```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
DAVID P. READ,                                              :
                                Plaintiff,                  :
                                                            :        10-CV-9042 (JPO)
                -v-                                         :
                                                            :        OPINION AND ORDER
TOWN OF SUFFERN POLICE DEPARTMENT,                          :
et al.,                                                     :
                                Defendants.                 :
------------------------------------------------------------X
```

J. PAUL OETKEN, District Judge:

     Plaintiff David P. Read's brings this lawsuit against the Town of Suffern Police Department pursuant to 42 U.S.C. § 1983. (*See* Dkt. No. 208 ("JPTO") at 2.) The background of this case is set out in the Court's decision on summary judgment, familiarity with which is assumed. *See Read v. Town of Suffern Police Dep't*, No. 10 Civ. 9042 (JPO), 2013 WL 3193413 (S.D.N.Y. June 25, 2013). The sole claim that survived summary judgment is Read's claim premised on Defendant Officer David Tarantino's alleged use of a Taser on Read when Read was handcuffed to a bar while in police custody. *See id.* at *2, *8.

     Now before the Court is Read's motion in limine to exclude evidence regarding Read's arrest on April 27, 2009, and evidence of Read's prior criminal history and history of orders of protection. (Dkt. No. 210.) For the reasons that follow, Read's motion is granted in part. Decision is reserved on certain issues, and elements of this ruling are subject to reconsideration at trial.

**I.    Background**

     This suit concerns a series of events that began on April 27, 2009, when Read was arrested for violating an order of protection and was taken to the Suffern police station. *Read*, 2013 WL 3193413, at *1-2. The relevant facts, as reflected in the present record, are as follows.

1

Tarantino's shift, as pertinent to this incident, began on April 28, the day after Read's arrest. Tarantino was aware at that time that Read was in custody for criminal contempt and aggravated harassment charges. (Dkt. No. 219 ("Tarantino Br." Ex. 4 ("Tarantino Depo."), at 15-17.) According to Tarantino, Read attempted to harm himself with a prison-issued blanket as well as pieces of a shredded bottle. (Tarantino Depo. at 37-47.) Then, the toilet in the holding cell began to flood.[1] Read was taken out of the holding cell to the processing room, where officers handcuffed him to a bar on the wall in a reverse-seated position. (Read Depo. at 59-60; Tarantino Depo. at 50-53.) While restrained, Read attempted to reach into his bag, which was next to him at the time. (Read Depo. at 61, 102; Tarantino Depo. at 54-57.) Read states that he "tried to get [his] medication," while Tarantino asserts that Read had retrieved the medication and was ingesting pills. (Read Depo. at 61; Tarantino Depo. at 57-59, 61-62.)

Read was then shocked with a Taser. (Read Depo. at 61-64; Tarantino Depo. at 81-86.) Read states that he was first tased by Officer Michael Lourenso (Read Depo. at 61-62), although this is disputed.[2] Read was subdued. Next, Read asserts, Tarantino continued to shock him, "holding the trigger down and hitting it more jolts [sic] or whatever they do with it," and "turned around and sa[id to Read], 'How do you like this, you motherfucker? How does this feel? I'm going to roast your ass.'" (Read Depo. at 62.) Tarantino disputes this. (JPTO at 11.)

---

[1] It is undisputed that the cell toilet clogged and began to flood. Read concedes that he put paper and perhaps other items into the toilet, but says he has "no idea" whether he caused the overflow. (Read Depo. at 59, 63.) Tarantino asserts that Read intentionally clogged the toilet with paper towels. (Dkt. No. 142, ¶ 7; Tarantino Depo. at 47-49.)

[2] Tarantino does not mention Lourenso's presence in the processing room, and Lourenso states that he had no contact with Read following his transport to the police station and never used force or deployed his Taser during or after Read's arrest. (Dkt. No. 132 ("Lourenso Decl.") ¶¶ 6-7.) Either way, the legality of the use of the Taser to prevent Read from accessing his bag will not be an issue at trial. As the Court ruled previously, the initial use of the Taser—regardless of which officer was responsible—does not give rise to a claim of excessive force, given the potential at that time for Read to cause harm to himself or others. *See Read*, 2013 WL 3193413, at *8.

## II.  Discussion

Evidence is admissible only if it is relevant to the matter at issue. Fed. R. Evid. 401, 402. Even relevant evidence, however, may be excluded "if its probative value is substantially outweighed" by the danger of unfair prejudice, undue delay, or confusion. Fed. R. Evid. 403. Read requests that, at trial, Tarantino be precluded from introducing evidence of his arrest that led to his detention in the custody of the Suffern police; the subsequent resolution of that case; and Read's other criminal history. The Court grants his motion in part and denies it in part.

### A.  Relevance for Liability

Much of the evidence proffered by Tarantino is irrelevant to the central liability question at trial—that is, "[w]hether in the particular circumstances faced by [Tarantino], a reasonable officer would believe that the force employed was lawful." *Cowan ex rel. Estate of Cooper v. Breen*, 352 F.3d 756, 764 n.7 (2d Cir. 2003). As noted above, Tarantino stated in his deposition that he was aware that Read was arrested on charges of criminal contempt and aggravated harassment. (Tarantino Depo. at 16-17.) Evidence of what Tarantino knew on April 28 about Read's arrest is relevant to the reasonableness of Tarantino's later use of force. The Court concludes that the relevance of this evidence is not substantially outweighed by its potential for unfair prejudice. *See* Fed. R. Evid. 403. Of course, the converse is true for evidence that was unknown to Tarantino at the time of the arrest is very unlikely to be probative of the reasonableness his use of force. Thus, such evidence is either irrelevant to the liability question or has a very low degree of probative value, which is outweighed by its potential to unfairly prejudice Read.

Next, Tarantino testified at his deposition that he had previously interacted with Read numerous times over a span of many years when he responded to police calls involving Read, some of which related to "domestic incidents." (*Id.* at 13-15.) The deposition testimony on this

3

point is cursory, however. Without more information as to any evidence Tarantino would offer in this regard, the Court cannot determine whether Tarantino's prior dealings with Read are (1) relevant or (2) admissible under the Rule 403 test. The Court reserves decision on this question.

### B.     Background Evidence

Evidence of Read's violation of a restraining order and subsequent arrest and processing on April 27 and 28, 2009, even if not directly relevant to the central liability question, may nonetheless be admissible in order to convey the background or context of Read's detention. *See, e.g.*, *United States v. Gonzalez*, 110 F.3d 936, 941 (2d Cir. 1997) ("Background evidence may be admitted to show, for example, the circumstances surrounding the events or to furnish an explanation of the understanding or intent with which certain acts were performed." (quoting *United States v. Coonan*, 938 F.2d 1553, 1561 (2d Cir. 1991))).

As noted above, this background evidence—more particularly, information unknown to Tarantino at the time of the incident in question—has little or no probative value as to the central issue of whether Tarantino unreasonably used force against Read. At the same time, the potential for unfair prejudice is significant: the conduct underlying Read's conviction, his alleged hostility to his wife and others during his arrest, and his subsequent conduct in police custody prior to the incident at issue here may paint him in an unfavorable light before the jury. For these reasons, it currently appears that the Rule 403 balancing test weighs against Tarantino's introduction of this type of evidence. Of course, if *Read* were to present testimony regarding his arrest or the period of his detention prior Tarantino's entry on duty on April 28, the Court would be likely to conclude that Read has opened the door to further exploration of these topics by Tarantino. *See Arlio v. Lively*, 474 F.3d 46, 52 (2d Cir. 2007) (stating that evidence may become relevant if an opposing party has "opened the door" on a particular issue (citing *United States v. Carter*, 801 F.2d 78, 83 (2d Cir. 1986))).

The Court reserves ultimate decision on the admissibility of background evidence of the events of April 27 and 28, 2009, preceding Tarantino's use of force. This decision will depend on the evidence introduced at trial.

### C. Relevance for Impeachment

Rule 609 of the Federal Rules of Evidence specifically governs the admissibility of criminal convictions for impeachment purposes, and permits (but does not require) that a district court in a civil case may admit evidence of certain felony convictions, subject to the Rule 403 balancing test. *See United States v. Estrada*, 430 F.3d 606, 615-16 (2d Cir. 2005) ("[D]istrict courts, under Rule 609(a)(1), *may* admit evidence of a witness's felony convictions that do not constitute *crimen falsi*, subject to balancing pursuant to Rule 403.").[3]

In the event that Read testifies at trial—as is very probable—his testimony as a witness may be subject to impeachment under Rule 609. However, the Court is unable to conclude from the submissions at this stage that any of Read's criminal history (previous to his conviction stemming from the arrest on April 27, 2009) meets even the threshold requirements for admissibility. Exhibit J to Tarantino's memorandum of law—a Westlaw printout purporting to show portions of Read's criminal record—is deficient: it is not an official record, and furthermore, it fails to demonstrate that any of the convictions at issue were felony convictions. (*See* Dkt. No. 219, Ex. J.) While the record also contains a certificate showing that Read was convicted in 2006 of an offense under New York Penal Law 215.50, the Court notes that this crime is a Class A misdemeanor under New York law and thus falls outside the ambit of Rule 609(a)(1). (*See* Dkt. No. 137, Ex. K.) Therefore, unless there is a proper showing that Read's

---

[3] District courts *must*, on the other hand, admit "evidence of [a witness's] convictions for crimes involving 'dishonesty or false statement,' whether felonies or misdemeanors," pursuant to Rule 609(a)(2). *Estrada*, 430 F.3d at 615. Tarantino has not asserted that any of Read's convictions constitute crimes of dishonesty.

prior convictions include crimes of falsity or felonies, evidence of such convictions is barred for purposes of impeaching Read's testimony.

On the other hand, Read was convicted of several felony offenses following the April 2009 arrest, including aggravated criminal contempt in the first degree and criminal contempt in the first degree.[4]  Although these are felony convictions and thus fall under Rule 609(a)(1), the Court concludes that evidence of this conviction is inadmissible to impeach Read's testimony.

Evidence of a felony conviction "bear[s] on credibility to varying degrees" depending on the nature of the felony.  *Estrada*, 430 F.3d at 616.  Crimes involving theft, for instance, rank higher on the scale, whereas acts of violence or those demonstrating a short temper generally have little probative value.  *Id.* at 617-18.  While contempt may show a "willingness to ignore the law," *id.* at 618, most courts have rejected the argument that a violation of a protective order is particularly probative of untruthfulness.  *See United States v. Khalil*, No. 05-573-cr, 2005 WL 3117195, at *2 (2d Cir. Nov. 22, 2005) (summary order) (concluding that the violation of a protective order "is not, on its face, probative of credibility such as those convictions for perjury, criminal fraud, and embezzlement" for purposes of Rule 609(a)(2), particularly where the witness "did not take an oath to obey the order"); *United States v. Brown*, No. 07 Cr. 874 (KAM), 2009 WL 728448, at *7 (E.D.N.Y. Mar. 10, 2009) (ruling that a "conviction for criminal contempt is low on the impeachment value scale" because it is "not, by its nature, probative of veracity or credibility" (ellipses and internal quotation marks omitted)).  At the same time, the evidence of Read's present conviction presents a danger of unfair prejudice, since it is possible that the jury could infer that because Read has threatened or assaulted his wife he is a bad person—an impermissible inference as to Read's character, and one that is irrelevant to this suit.

---

[4] Read's conviction was affirmed on appeal.  *People v. Read*, 947 N.Y.S.2d 614, 615 (App. Div. 2d Dep't 2012), *lv. denied*, 978 N.E.2d 113 (N.Y. 2012).

Accordingly, the court grants Read's motion to exclude evidence of Read's criminal history for impeachment purposes.[5]

**D.     Damages**

Tarantino also argues that evidence of Read's prior arrests is relevant to the question of damages in this case because Read could otherwise "convey a pristine image to the jury on the issue of the damaging effects of this incident." (Tarantino Br. ¶ 13.) Some courts have held that such evidence is relevant in a false arrest case for these reasons. *See, e.g.*, *Redmond v. City of Chicago*, No. 06 C 3611, 2008 WL 539164, at *1-2 (N.D. Ill. 2008) ("Evidence concerning Redmond's prior arrests is relevant because if Redmond had been arrested on prior occasions the trier of fact could conclude from such evidence that Redmond would not have been as emotionally traumatized by the May 8, 2004, arrest as he claims since he had already experienced the arrest process on prior occasions.").

However, Read responds that his claim "is for damages caused by *Defendant's unlawful use of force*, rather than his arrest." (Dkt. No. 220 ("Read Reply") at 2.) Because Read's sole remaining claim is for excessive force while he was in police custody—not for false arrest—the prior arrest evidence lacks relevance on these grounds. *See Nunez v. City of New York*, No. 11 Civ. 5845 (LTS) (JCF), 2013 WL 2149869, at *10 (S.D.N.Y. May 17, 2013) ("[T]he defendants have not explained how the plaintiffs' previous incarceration would have any bearing on the plaintiffs' alleged emotional distress from being subjected to the use of excessive force.").

The Court grants the motion to preclude the use of Read's criminal history information in order to rebut Read's damages theory.

---

[5] While Read's restraining orders are not convictions and thus do not fall under Rule 609, the Court concludes that they are of even more tenuous probative value than Read's conviction for the April 2009 violation of the restraining order, but pose a similar risk of unfair prejudice. Accordingly, the restraining orders are also inadmissible for purposes of impeachment.

**III.   Conclusion**

For the foregoing reasons, it is hereby ordered that:

Plaintiff's motion to preclude evidence is GRANTED in part, as set out above, subject to reconsideration depending on the evidence presented at trial.  The Court reserves decision on other issues as noted above.

Counsel for the parties are directed to appear before the Court at the Thurgood Marshall United States Courthouse, Room 706, at 10:30 a.m. on January 8, 2015, to discuss trial scheduling.

The Clerk of the Court is directed to terminate the motion at docket number 210.

SO ORDERED.


Dated: December 23, 2014
       New York, New York

_____
J. PAUL OETKEN
United States District Judge